UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| United States ex rel.<br>Edward C. Randall, Jr. Relator<br><br>Plaintiffs,<br><br>v.<br><br>Heywood Healthcare Inc., and Athol Memorial Hospital, Inc.,<br><br>Defendants. | Case No. 4:23-cv-40018-MRG<br><br>Honorable Margaret R. Guzman |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO REFER AND TRANSFER CASE TO THE
U.S. BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS,
LEAVE TO FILE GRANTED ON NOVEMBER 7, 2024**

The Debtor-Defendants,[1] by their undersigned counsel, in further support of their Motion and in reply to the objection filed by Plaintiff [Docket No. 27] (the "Objection" or "Obj."), pursuant to this Court's order granting Debtor-Defendants leave to file a reply [Docket No. 32], state as follows:

**PRELIMINARY STATEMENT**

1.  Pursuant to this Court's Standing Order, the Court must refer and transfer the Action to the Bankruptcy Court, because the Action is a core proceeding "arising under" or "arising

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in *Defendants' Motion to Refer and Transfer Case to the U.S. Bankruptcy Court for the District of Massachusetts* [Docket No. 26] (the "Motion"). The Debtor-Defendants have stood independently for 118 years as a community-focused healthcare network in North Central Massachusetts, where they operate safety net hospitals and provide a wide range of essential medical and other healthcare services to the communities they serve, including vulnerable populations treated by their hospitals.

in" the Chapter 11 Cases and/or is "related to" the Chapter 11 Cases, as set forth in the Motion.

2. Plaintiff's deliberate efforts to evade Bankruptcy Court jurisdiction were willful violations of the automatic stay imposed by section 362(a) of the Bankruptcy Code. The Court should not reward or further facilitate Plaintiff's violation of the law, all to the detriment of the Debtor-Defendants' creditors and other stakeholders in the Plan who have acted in good faith. Absent Plaintiff's improper efforts, Plaintiff's case plainly would have been transferred to the Bankruptcy Court prior to confirmation and there would be no possible question of jurisdiction.

3. In his Objection, Plaintiff misapplies out-of-Circuit law to his analysis of whether the Bankruptcy Court has "related to" jurisdiction over the Action. Under the governing First Circuit jurisdictional analysis, and also under the correct analysis of Plaintiff's chosen "close nexus" test, the Bankruptcy Court plainly has "related to" jurisdiction over the Action. Moreover, Plaintiff's own arguments about non-dischargeability demonstrate the Bankruptcy Court also has "arising under" or "arising in" jurisdiction.

4. For the reasons set forth below and in the Motion, pursuant to the Standing Order, the Court should enter an order referring and transferring the Action to the Bankruptcy Court.

## ARGUMENT

### A. Plaintiff Has Willfully Violated The Automatic Stay

5. The Action is stayed because the government declined to intervene [Docket No. 14], and *qui tam* FCA actions in which the government declines to intervene are subject to the automatic stay imposed by section 362(a) of the Bankruptcy Code.[2] *See, e.g., U.S. ex rel. Kolbeck*

---

[2] That is not the only consequence of the government's non-intervention here. At least one court has recently held that the *qui tam* provisions of the False Claims Act are unconstitutional. *See*, *U.S. ex rel. Zafirov v. Fla. Med. Assocs., LLC*, No. 8:19-CV-01236-KKM-SPF, 2024 WL 4349242 (M.D. Fla. Sept. 30, 2024) (granting defendants judgment on pleadings because FCA's *qui tam* provisions violate the Appointments Clause of Article II of the United States Constitution).

*v. Point Blank Sols., Inc.*, 444 B.R. 336, 338 (E.D. Va. 2011) (in *qui tam* FCA actions in which the government declines to intervene, the automatic stay applies and the exception provided by section 362(b)(4) of the Bankruptcy Code for an "action or proceeding of a governmental unit" does not); *U.S. ex rel. Godstein v. P & M Draperies, Inc.*, 303 B.R. 601 (Bankr. D. Md. 2004) (same); *see also U.S. ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 290 (E.D.N.Y. 2006) (same with respect to individual claims).

6. Plaintiff has willfully violated the automatic stay by continuing this Action by, *inter alia*, filing multiple motions to extend time for service of Plaintiff's complaint [Docket Nos. 18, 20]. "A violation is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." *In re Kim*, 554 B.R. 304, 313 (Bankr. D. Mass. 2016) (quoting *Laboy v. Doral Mortg. Corp.* (*In re Laboy*), 647 F.3d 367, 374 (1st Cir.2011). There can be no doubt that Plaintiff's filings were intentional, and, in fact, they were premised upon his knowledge of the Chapter 11 Cases. (*See, e.g.,* Docket Nos. 18, 20, ¶ 2.)

7. If this Action is not referred and transferred to the Bankruptcy Court, Plaintiff's bad faith litigation tactics will be rewarded, and he will improperly circumvent the Plan's approved claims allowance and administration process. This risks adversely impacting creditor recoveries, the funding of the Liquidating Trust with the GUC Cash Amount and the timing of distributions – all to the inequitable detriment of the Debtor-Defendants' many creditors and other stakeholders who, unlike Plaintiff, have participated in the bankruptcy process in accordance with the law.

**B.      The First Circuit Has Not Adopted the "Close Nexus" Test, And, Under Controlling Precedent, The Bankruptcy Court Has "Related To" Jurisdiction Over The Action**

8. "'[R]elated to' proceedings are those which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or

otherwise have an impact upon the handling and administration of the bankrupt estate." *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Hernández-Montañez (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 77 F.4th 49, 60 (1st Cir. 2023) (internal quotation marks and citation omitted). The Motion establishes – *and Plaintiff does not contest* – that a bankruptcy court has "related to" jurisdiction over *qui tam* proceedings against debtor-defendants pre-confirmation, and thus that the Bankruptcy Court would have had "related to" jurisdiction over this Action before confirmation of the Plan. (Motion, ¶ 28 (collecting cases).)

9. Plaintiff mistakenly attempts to analyze the Bankruptcy Court's post-confirmation "related to" jurisdiction over this Action through a so-called "close nexus" test. (Obj., ¶¶ 9-10.) Under that test, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 167 (3d Cir. 2004).

10. **The First Circuit has not adopted the "close nexus" test**. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 77 F.4th 49, 60 (1st Cir. 2023) (characterizing the close nexus test as "a narrower conception of 'related to' jurisdiction" than is used in the First Circuit). Instead, in the First Circuit, analysis of "related to" jurisdiction, whether post-confirmation or otherwise, begins with two premises: First, "[t]he statutory grant of 'related to' jurisdiction is quite broad." *Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In re Bos. Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 105 (1st Cir. 2005) (observing that "Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates."). Second, "related to" jurisdiction "must be determined case-by-case" (*id.*, 410 F.3d at 107), and "context is important"

4

(*id.* at 106).

11. Thus, courts in the First Circuit regularly determine "related to" jurisdiction without reference to the "close nexus" test. *See, e.g., In re The Educ. Res. Inst., Inc.*, 442 B.R. 20, 24 (Bankr. D. Mass. 2010) (holding that court had "related to" jurisdiction over post-confirmation dispute because "the dispute … (1) arose entirely pre-confirmation; (2) directly effects the prospects for the newly reorganized [debtor]; (3) was specifically identified during the Plan confirmation process; and (4) was brought before the Court for resolution less than a week after the Confirmation Order entered");[3] *In re Safety Med. Supply Int'l, Inc.*, 334 B.R. 13, 17 (Bankr. D. Mass. 2005) (holding court had "related to" jurisdiction over litigation commenced 14 months post-confirmation simply because it was "conceivable" the action "might increase the potential value of [debtor's] assets" available to unsecured creditors); *In re Almac's, Inc.*, 202 B.R. 648, 655 (D.R.I. 1996) (holding that "confirmation does not automatically constrict the scope of jurisdiction permissibly exercised by bankruptcy courts," and assessing post-confirmation "related to" jurisdiction based on "whether the resolution of the present case will 'conceivably have an effect on the estate'").

12. In those limited cases where post-confirmation "related to" jurisdiction is narrowed in the First Circuit, the "primary purposes" for doing so are to avoid (a) "the specter of endless bankruptcy jurisdiction" and to avoid (b) "unfairly advantaging reorganized debtors." *In re Bos. Reg'l Med. Ctr.*, 410 F.3d at 106.

13. Neither of the purposes for narrowing post-confirmation "related to" jurisdiction

---

[3] The bases for the court's holding in *In re The Educ. Res. Inst.* apply with equal force here: (1) Plaintiff's complaint relates entirely to preconfirmation conduct; (2) it directly effects the prospects of the reorganized Debtor-Defendants to implement the Plan; (3) it was identified during the Plan confirmation process when the Debtor-Defendants scheduled Plaintiff's claim (*see* Bankr. Docket No. 1015); and (4) the Debtor-Defendants' brought the dispute to this Court only 11 days after the Plan was confirmed.

are present here. *First,* a referral of this Action to the Bankruptcy Court will not constitute "endless bankruptcy jurisdiction"; the Plan was confirmed only 11 days before the Motion, and many post-confirmation activities remain to be completed in the Chapter 11 Cases – including, without limitation, the claims allowance and administration process (*see* Plan Article VIII) that directly impacts this Action.

14. *Second*, a referral of this Action to the Bankruptcy Court will not "unfairly advantage" the Debtor-Defendants. To the contrary, if the Action is not referred, the Debtor-Defendants, their co-debtors and all of their creditors and other stakeholders will be unfairly disadvantaged relative to Plaintiff; Plaintiff has engaged in bad faith litigation tactics – including willful violations of the automatic stay – to attempt to evade the Plan and to receive better treatment for his claim than similarly situated general unsecured claims. Meanwhile, Plaintiff's improper attempt to circumvent Bankruptcy Court jurisdiction will be rewarded.

15. Thus, applying the law of the First Circuit, context marshals strongly in favor of holding that the Bankruptcy Court has "related to" jurisdiction.

## C. The Bankruptcy Court Would Have "Related To" Jurisdiction Even If, *Arguendo*, The "Close Nexus" Test Applied

16. Even if this Court assessed "related to" jurisdiction of the Action under the "close nexus" test, "related to" jurisdiction still exists here. There is a "close nexus" between the Action and the Plan and Chapter 11 Cases because the Action will "affect the interpretation, implementation, consummation, execution, [and] administration of the confirmed plan." *In re Resorts Int'l, Inc.*, 372 F.3d at 167.

17. Consider, for instance, the Plan's claims allowance process under Article VIII of the Plan, the administration of which is in its incipient stages. The Debtor-Defendants, who have properly scheduled Plaintiff's claim, have the right to object to Plaintiff's claim and seek

disallowance under section 502 of the Bankruptcy Code. "The claims allowance process is central to the administration of any bankruptcy estate." *In re Oklahoma Merge, LP*, No. 19-11808(JTD), 2022 WL 2720025, at *4 (Bankr. D. Del. July 13, 2022) (finding post-confirmation "related to" jurisdiction under "close nexus" test because the matter required the court to resolve a claim objection, which "affects an integral aspect of the bankruptcy process") (citation and quotation marks omitted). Here, the interplay between the Plan's claims allowance process and the Action will have a significant impact on creditor recoveries, funding of the Liquidating Trust with the GUC Cash Amount, and timing of distributions, which establishes a "close nexus" for "related to" jurisdiction.

18.  Plaintiff's assertion that the Debtor-Defendants' pre-petition conduct gave rise to a "non-dischargeable" debt (Obj.,¶ 16) further establishes a close nexus. Non-dischargeability determinations are squarely within the purview of the Bankruptcy Court (indeed, they are created by the Bankruptcy Code, pursuant to section 523), and resolution of the non-dischargeability of the Debtor-Defendants' alleged debt to Plaintiff will impact implementation and administration of the Plan.

19.  The fact that the Plan was confirmed only 11 days before the Motion also supports the close nexus. *See, e.g., Paddock Enterprises, LLC*, No. 20-10028, 2022 WL 4396358, at *3 (Bankr. D. Del. Sept. 22, 2022) (emphasizing that the timing of a discovery dispute that arose 19 days post-confirmation was relevant to the court's determination that there was a "close nexus" establishing "related to" jurisdiction over the dispute; the plan was "recently confirmed" and "in its nascent stages"). "Related to" jurisdiction here simply would not raise "the specter of endless bankruptcy jurisdiction." *In re Bos. Reg'l Med. Ctr., Inc.*, 410 F.3d at 106.

20.  Plaintiff's cases denying "related to" jurisdiction are inapposite. Most of them

concern litigation over post-confirmation conduct which was brought long after substantial confirmation of the plan in question.[4] Here, by contrast, the claims (which the Debtor-Defendants properly scheduled) concern pre-petition conduct and the recently confirmed plan is in its nascent stages of implementation and administration. As for *Lacy v. FDIC (In re Lacy)*, the post-confirmation litigation concerned an unimpaired secured claim for which the plan provided payment "in a manner which does not affect the payments to any other creditor"; the claim was to be satisfied by real property that was expressly unaffected by the plan, pursuant to a contract that was expressly unaltered by the plan. 183 B.R. 890, 894 (Bankr. D. Colo. 1995). Here, by contrast again, Plaintiff's contingent, unliquidated, disputed claim is scheduled in the class of general unsecured claims, and allowance or disallowance will have a significant impact on creditor recoveries, funding of the Liquidating Trust with the GUC Cash Amount, and timing of distributions.

**D.  Plaintiff's Other Arguments Support "Arising Under" or "Arising In" Jurisdiction**

21. Plaintiff also misleadingly argues that the Bankruptcy Court lacks "related to" jurisdiction "because [Plaintiff's] claims are non-dischargeable in bankruptcy." (Obj., ¶ 16.) Yet only the Bankruptcy Court is positioned to determine whether Plaintiff's claims against the Debtor-Defendants are non-dischargeable. Non-dischargeability determinations are "core proceedings arising under title 11." 28 U.S.C. § 157(b)(1); *see also* 28 U.S.C. § 157(b)(2)(I). Moreover, the Bankruptcy Court has never made such a determination. Plaintiff cannot rely on a ruling about his

---

[4] In *Omega Corp. v. I.R.S. (In re Omega Corp.)*, the parties' dispute "concern[ed] a post-confirmation contract" and arose over a year after the plan had been "substantially consummated." 173 B.R. 830, 835 and n.4 (Bankr. D. Conn. 1994). The relevant litigation in *H & L Developers, Inc. v. ARVIDA/JMB Partners (In re H & L Dev., Inc.)* also arose almost a year post-confirmation and concerned post-confirmation conduct after the plan had been substantially consummated. 178 B.R. 71 (Bankr. E.D. Pa. 1994). The litigation in *A.R.E. Mfg. Co., Inc. v. U.S. (In re A.R.E. Mfg. Co., Inc.)* commenced a year post-confirmation and related to post-confirmation conduct over which, moreover, the U.S. Claims Court had *exclusive jurisdiction*. 138 B.R. 996, 998 (Bankr. M.D. Fla. 1992).

claims from the Bankruptcy Court that he has not received.[5]

22.     Insofar as Plaintiff's pursuit of the Action is premised on an unresolved non-dischargeability claim, as he asserts in his Objection, the Bankruptcy Court also has "arising under" and/or "arising in" jurisdiction to make that determination—entirely separate from the Bankruptcy Court's "related to" jurisdiction.  "[P]roceedings 'aris[e] under title 11' when … the Bankruptcy Code creates the cause of action or provides the substantive right invoked[.]").  *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (1st Cir. 2017) (citation and internal quotation marks omitted).  Plaintiff's right to a determination of whether his claims are non-dischargeable is created by and only exists pursuant to section 523 of the Bankruptcy Code.  Thus, the Bankruptcy Court has "arising under" jurisdiction.  *See also, e.g., In re Reardon*, 566 B.R. 119, 123 (Bankr. D. Mass. 2017) (bankruptcy court has jurisdiction over case to determine dischargeability, because, "[i]f this bankruptcy defense were successful, it would be dispositive and preclusive of the underlying state law claim").

23.     Similarly, the First Circuit has "defined 'arising in' proceedings generally as those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  858 F.3d at 662–63 (citation and internal quotation marks omitted).  The existence of Plaintiff's right to pursue the Action notwithstanding the Chapter 11 Cases and confirmed Plan depends upon a non-dischargeability judgment by the Bankruptcy Court (which, again, Plaintiff has not received).  While the "dividing line is unclear between proceedings that 'arise under' as opposed to 'arise in' and as opposed to 'relate to' title 11'" (*id.*, at 662), the

---

[5] Nor is it relevant whether the Debtor-Defendants contested the allegations from Plaintiff's complaint in the Motion.  This is especially true since Plaintiff has not yet served the Debtor-Defendants with his complaint, and the Debtor-Defendants have expressly reserved "all rights to answer or otherwise respond to the Complaint and further reserve[d] any and all claims, counterclaims, affirmative defenses and/or objections that may be asserted in this Action." (Motion, p.1, n.1.)

4854-8728-8054.2

Standing Order requires this Court to refer and transfer this Action to the Bankruptcy Court irrespective of where that line is drawn.

## CONCLUSION

For the reasons set forth above and in the Motion, the Debtor-Defendants respectfully request that the Court enter an order referring and transferring this Action to the Bankruptcy Court and granting such other relief as this Court deems equitable and proper.

Dated: November 7, 2024

Respectfully submitted,

*/s/ Edward J. Green*
Edward J. Green (*Pro Hac Vice* pending)
David B. Goroff (*Pro Hac Vice* pending)
**FOLEY & LARDNER LLP**
321 N. Clark Street, Suite 3000
Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
egreen@foley.com
dgoroff@foley.com

Jake W. Gordon (*Pro Hac Vice* pending)
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Tel: (313) 234-7100
Fax: (313) 234-2800
jake.gordon@foley.com

-and-

*/s/ John M. Flick*
John M. Flick (#652169)
**FLICK LAW GROUP, P.C.**
144 Central Street, Unit 201
Gardner, MA 01440
Tel: (978) 632-7948
jflick@flicklawgroup.com

*Counsel to the Defendants Heywood Healthcare Inc., and Athol Memorial Hospital, Inc.*

## **CERTIFICATE OF SERVICE**

    I, Edward J. Green, do hereby certify that on November 7, 2024, I caused a copy of the foregoing document to be served through the ECF system, and that copies will be sent electronically to registered participants.

Dated: November 7, 2024          /s/ *Edward J. Green*